UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARY BELL SWANIGAN,

       Plaintiff,

v.                                 Case No. 3:19-cv-272-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application for a period of disability and disability insurance

benefits ("DIB").  Plaintiff alleges she became disabled on January 15, 2013.  (Tr.

32,162.)  The assigned Administrative Law Judge ("ALJ") held a video hearing on

March 19, 2018, at which Plaintiff appeared without representation.  (Tr. 31, 52-

53.)  The ALJ found Plaintiff not disabled from January 15, 2013 through June

21, 2018, the date of the decision.[2]  (Tr. 30-45.)

In reaching the decision, the ALJ found that Plaintiff had engaged in

substantial gainful activity from January 15, 2013 until May 31, 2016 and,

_____

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge.  (Docs. 13, 16.)

[2] Plaintiff had to establish disability on or before September 30, 2018, her date
last insured, in order to be entitled to a period of disability and DIB.  (Tr. 33.)

therefore, determined that the earliest date that Plaintiff could establish disability was June 1, 2016.  (Tr. 35.)  The ALJ also found that Plaintiff's severe impairments included major depressive disorder and anxiety disorder, but found her mild renal insufficiency, insomnia, obesity, hypertension, gout, hyperglycemia, low back pain, and type II diabetes were non-severe impairments.  (Tr. 36.)  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [Plaintiff] is able to understand, remember and carry out short, simple instructions.  [Plaintiff] is able to occasionally interact with coworkers and supervisors and can engage in brief and superficial contact with the public.  She is able to respond appropriately to changes in a routine work[-]place setting and make simple work-related decisions.

(Tr. 38.)  Based on the testimony of a Vocational Expert ("VE"), the ALJ found Plaintiff was unable to perform her past relevant work as a furniture salesperson (D.O.T. 270.357-030, light semi-skilled work).  (Tr. 43.)  The ALJ also noted, *inter alia*, that Plaintiff was 60 years old on the alleged disability date, which was defined as an individual closely approaching retirement age (20 C.F.R. § 404.1563).  Pursuant to the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded Plaintiff was capable

of performing jobs that exist in significant numbers in the national economy.[3] (Tr. 43.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from January 15, 2013 through June 21, 2018. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a

---

[3] In making this determination, and in assessing the extent to which Plaintiff's non-exertional "limitations erode[d] the occupational base of unskilled work at all exertional levels," the ALJ relied on the testimony of the VE that Plaintiff would be able to perform the representative jobs of cleaner II (D.O.T 919.687.014, medium, unskilled work), hand packager (D.O.T. 920.587-018, medium, unskilled work), and sandwich board carrier (D.O.T. 299.687-014, light, unskilled work).  (Tr. 44.)

contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ erred by not properly advising her of the right to representation at the hearing, that Plaintiff did not knowingly waive her right to be represented, and that Plaintiff was prejudiced by the lack of legal representation.  (Doc. 18 at 4-8.)  Second, Plaintiff argues that the ALJ erred by relying on the testimony of the VE that Plaintiff could perform the medium exertion jobs[4] of cleaner II and hand packager, and the light exertion job of a sandwich carrier, when there was no vocational testimony about the amount of adjustment that would be necessary to perform this job as required by the Medical-Vocational Guidelines (the Grids).  (*Id.* at 8-10.)  Plaintiff explains that her past relevant work of a furniture

---

[4] Plaintiff argues that pursuant to the Dictionary of Occupational Titles, medium exertion jobs require a claimant to be able to exert twenty to fifty pounds of force occasionally.  (Doc. 18 at 9.)

salesperson was light duty work, which she described as requiring the lifting of no more than ten pounds and standing and walking most of the day. (*Id.* at 8.) Plaintiff also contends that she "never testified how much she could lift and accordingly there was no predicate for the ALJ to assume that the [P]laintiff could perform at a greater exertional level than her past relevant work[,] i.e. light with very limited lifting." (*Id.*)  Without directly challenging the ALJ's RFC[5] determination, Plaintiff argues that given her age,[6] "the alternative employment should have been either sedentary or light duty work without additional evidence of how much the [P]laintiff could lift and carry." (*Id.* at 9.)

Defendant counters that the Commissioner provided Plaintiff with sufficient notice of her right to representation, she knowingly and voluntarily waived this right, the ALJ was not required to further explain her right to representation, and even if Plaintiff's waiver was invalid, Plaintiff failed to show prejudice. (Doc. 21.)

---

[5] Only in the Conclusion of the Brief does Plaintiff specifically challenge the RFC by requesting that the Court reverse and award benefits based on Plaintiff's age or, alternatively, reverse and remand "for additional analysis regarding the [P]laintiff's residual functional capacity and additional vocational evidence specifically about the adjustment of the [P]laintiff to other work." (Doc. 18 at 10.)

[6] Plaintiff, who was born in December of 1952, purportedly "accepts the amended onset date" of August 20, 2015 and asserts that she was 62 years old on the amended disability onset date. (Doc. 18 at 2, 9.)  The August 20, 2015 amended onset date was established by the district office based on Plaintiff's earnings which represented substantial gainful activity. (Tr. 35.)  However, the ALJ found that Plaintiff engaged in substantial gainful activity from January 15, 2013 through May 31, 2016 and determined that the earliest date disability could be established was June 1, 2016. (*Id.*)  Plaintiff does not specifically challenge this finding. Thus, Plaintiff was actually 63 years old on the amended onset date of June 1, 2016, as determined by the ALJ.

Defendant also asserts that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.  (*Id.*)  The Court agrees with Plaintiff on the first issue and, therefore, it does not address the remaining issues in detail.

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ."  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam).  The claimant must be notified of her statutory right prior to the hearing.  *Cowart v. Schweiker*, 662 F.2d 731, 734 (11th Cir. 1981).  To effectively waive the right to representation, the claimant must be "properly apprised of her options concerning representation" and must knowingly and intelligently waive the right to counsel.  *Newberger v. Astrue*, No. 3:07-cv-585-J-HTS, 2008 WL 299012, *1 (M.D. Fla. Feb. 1, 2008) (internal citations omitted).  Each claimant must be notified in writing of the options for obtaining counsel, including the availability of free legal services and the statutory cap on attorney's fees.  *Id.* at *2 (internal citations omitted).  Also, "when it appears the claimant may be incompetent or have a mental illness, the ALJ should explain with even greater care the right to counsel as well as the role of an attorney in the hearing to ensure the claimant understands these subjects."  *Id.*

Further:

> Whether or not the applicant is represented, the ALJ still has a duty to develop a full and fair record.  When the right to representation has not been waived, however, the hearing examiner's obligation to develop a full and fair record rises to a special duty.  This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel.  In carrying out this duty, the

6

ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  Under this standard, we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ.  Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.

*Brown*, 44 F.3d at 934-35 (internal citations and quotations omitted).

Here, the ALJ held Plaintiff's hearing on March 19, 2018.  Plaintiff was advised of her right to representation several times prior to the hearing.  For example, the November 20, 2015 Notice of Disapproved Claim stated in relevant part:

**IF YOU WANT HELP WITH YOUR APPEAL**

You can have a friend, lawyer, or someone else help you.  There are groups that can help you find a lawyer or give you free legal services if you qualify.  There are also lawyers who do not charge unless you win your appeal.  Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know.  If you hire someone, we must approve the fee before he or she can collect it.  And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

(Tr. 108.)  The Notice of Reconsideration informing Plaintiff of her right to request a hearing before an ALJ provided the same information.  (Tr. 110-11.)  In the transcribed and summarized Request for Reconsideration, dated May 3, 2016, Plaintiff stated "I understand I have a right to be represented at the reconsideration."  (Tr. 115.)  Similarly, the Request for Hearing by Administrative

Law Judge signed by Plaintiff on July 3, 2016 stated, "You have a right to be
represented at the hearing.  If you are not represented, your Social Security
office will give you a list of legal referral and service organizations."  (Tr. 117
(emphasis in the original); *see also* Tr. 118-19 (acknowledging Plaintiff's
understanding of her right to be represented).)  The Commissioner also mailed a
letter to Plaintiff on October 5, 2016, explaining, among other things, the right to
representation:

> You may choose to have a representative help you.  We will work
> with this person just as we would work with you.  If you decide to
> have a representative, you should find one quickly so that person
> can start preparing your case.
>
> Many representatives charge a fee only if you receive benefits.
> Others may represent you for free.  Usually, your representative may
> not charge a fee unless we approve it.  We are enclosing a list of
> groups that can help you find a representative.

(Tr. 120-21; *see also* Tr. 124-25 (SSA Publication No. 05-10075, Your Right to
Representation) & 126-29 (Form HA-L1, Important Notice About
Representation).)

The Commissioner's Notice of Hearing, dated February 21, 2018, also
reminded Plaintiff of the right to representation, urged Plaintiff to find a
representative quickly if she wished to be represented, and explained
representation fees.  (Tr. 137.)  The Commissioner again included a copy of SSA
Publication No. 05-10075, Your Right to Representation providing, *inter alia*,

additional information about the role of a representative, obtaining

representation, and representative fees.  (Tr. 142-43.)

On March 19, 2018, Plaintiff appeared at the hearing before the ALJ

without a representative.  (Tr. 68.)  The following colloquy took place at the

beginning of the hearing:

> ALJ:  . . . Now, ma'am, you are here today without an attorney or a
> non-attorney representative.  Do you have questions as to [your]
> rights to representation?
> CLMT:  No, sir.
> ALJ:  Is it your intention today to proceed with the hearing without
> one?
> CLMT:  Yes, sir.
> ALJ:  Let the record reflect that the claimant has acknowledged her
> right to representation and that she has waived that right as well.

(Tr. 52-53.)  At the beginning of the VE's examination by the ALJ, the following

exchange took place:

> ALJ:  Now, Ms. Swanigan, do you have any questions as to her
> qualifications?
> CLMT:  Me?
> ALJ:  Yes, ma'am.
> CLMT:  I don't know who Ms. Jackson is.
> ALJ:  I told you, Ms. Jackson is an impartial vocational expert.  I
> explained that at the beginning of the hearing.
> CLMT:  Oh, okay, sir.
> ALJ:  Her resume is in your file.

(Tr. 72.)  The ALJ then proceeded to examine the VE.  (Tr. 72-75.)  After the ALJ

questioned the VE, the following colloquy took place:

> ALJ:  . . . Now, do you have any questions of Ms. Jackson, Ms.
> Swanigan?
> CLMT:  No.  Sir, I - -
> ALJ:  All right.  We'll let her go, and then you can talk to me.

> . . .
> ALJ:  All right.  What were you going to say?
> CLMT:  Did she say I was a sandwich wrapper?
> ALJ:  Well, that could be, is what she is saying.  She said you were a
> furniture salesperson.  Under Social Security, if you cannot do your
> past work, the question becomes whether you can do other work,
> and it doesn't matter what that job is, as long as you can do it.
> CLMT:  Oh, I misunderstood, sir.
> ALJ:  Yeah.
> CLMT:  I thought she said those were my past jobs.

(Tr. 75.)

Although not referenced or discussed during the hearing, on March 19,

2018, Plaintiff signed a form titled Claimant's Right to Representation, explaining

a claimant's right to a representative, the benefits of having a representative, the

cost of obtaining a representative, free representation, the right to proceed

without representation, and the right to postpone the hearing to obtain

representation.  (Tr. 158.)  The form then instructed and inquired as follows:

> **Answer below only if you want a postponement**
>
> Do you understand that if you want a postponement today in order to
> obtain a representative, you are entitled to only ONE such
> postponement; and if you do not have a representative at the next
> scheduled hearing, the ALJ will require you to proceed without a
> representative?

(*Id.*)  Plaintiff checked off "Yes."  (*Id.*)  The form then asked as follows:

> **Answer below only if you would like to proceed without
> representation**
>
> Do you understand your right to have a representative at this
> hearing?
> Do you understand the benefits of having a representative?
> Do you understand the cost of obtaining a representative?

> Do you understand the possibility of obtaining free representation?
> Do you want to proceed today without representation?

(*Id.*)  Plaintiff also checked off "Yes" in response to all of these questions.  (*Id.*)

As the record shows, Plaintiff received several notices from the Commissioner explaining the right to representation prior to the hearing.  It also appears that on the date of the hearing, March 19, 2018, Plaintiff signed a form indicating that she understood her right to representation.  (Tr. 158.)  However, her answers were contradictory as she indicated that she wanted a postponement of the hearing in order to obtain representation *and* that she wished to proceed without representation.  Plaintiff's contradictory responses on the Claimant's Right to Representation form raise questions as to whether Plaintiff understood what her options were regarding representation and/or whether the ALJ accurately interpreted Plaintiff's responses on the form, although it is unclear whether the form was reviewed by the ALJ at all.

Moreover, in light of Plaintiff's mental impairments, which the ALJ acknowledged at the hearing, the ALJ had a heightened duty to ensure that Plaintiff understood her right to representation and the role of an attorney in the proceedings.  The hearing testimony does not demonstrate that the ALJ fulfilled this heightened duty during the hearing.  In fact, the ALJ never inquired about Plaintiff's contradictory responses during the hearing or Plaintiff's decision to proceed without a representative beyond the cursory observations and questions discussed above.  (Tr. 52-53 ("Now, ma'am, you are here today without an

attorney or a non-attorney representative.  Do you have questions as to rights to representation?  . . .  Is it your intention today to proceed with the hearing without one?  . . .  Let the record reflect that the claimant has acknowledged her right to representation and that she has waived that right as well.").)   At best, Plaintiff's contradictory waiver responses and apparent confusion throughout the hearing raise questions about Plaintiff's ability to make an informed choice to proceed without representation.  *See* HALLEX I-2-6-52 ("Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will either secure on the record the claimant's decision concerning representation or obtain from the claimant a written waiver of the claimant's right to representation, which will be marked as an exhibit.").  Based on the foregoing, the Court cannot conclude that Plaintiff knowingly and voluntarily waived her statutory right to representation.  *Cregar v. Astrue*, No. 3:07-CV-1008-J-JRK, 2009 WL 383388, at *7 (M.D. Fla. Feb. 13, 2009) (finding that the claimant had not knowingly and voluntarily waived the right to representation where the claimant "was confused about the process, as he had not even reviewed his file prior to the first hearing," and noting that "the ALJ should have explored other options available to" the claimant "to ensure [claimant] was both aware of these options, and willing to forego them").

However, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case

12

must be remanded . . . for further development of the record."  *Newberger*, 2008 WL 299012 at \*3 (internal citations omitted).  This "requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision."  *Townsend v. Comm'r of Soc. Sec.*, 555 F. App'x 888, 891 (11th Cir. Feb. 7, 2014) (per curiam) (internal citations omitted).

Plaintiff's counsel now explains that once a person reaches the "closely approaching retirement age" category (ages 60-64), "there must be very little vocational adjustment to other work in terms of work processes, tools, settings or the industry at the sedentary and light duty residual functional categories."  (Doc. 18 at 7-8.)  Counsel argues that Plaintiff was prejudiced by the lack of representation because she probably did not know about these Medical-Vocational Guidelines and failed to cross-examine the VE regarding the vocational adjustments that would be necessary to perform the sandwich carrier job, categorized as light work.  (*Id.*)  The undersigned agrees and finds that Plaintiff suffered unfairness or clear prejudice by her lack of representation.  *See Cowart*, 662 F.2d at 736 (stating that insufficient questioning of the VE indicates that the claimant may have been prejudiced by the lack of counsel); *Griffis v. Astrue*, 619 F. Supp. 2d 1215, 1224 (M.D. Fla. 2008) (citing *Johnson v. Harris*, 612 F.2d 993, 997-98 (5th Cir. 1980)) ("As found by the Fifth Circuit, insufficient

questioning of the vocational expert may establish good cause to remand a case for further hearing and development of the record.").

Moreover, Plaintiff's counsel argues that Plaintiff was prejudiced by the lack of representation "as an experienced representative would highlight the fact that [she] has never performed medium work and there is no indication in the file that she could even perform medium work," and that Plaintiff "did not testify about the amount of weight that she could lift and those questions should have been asked to [ensure] that she had the physical strength to perform medium work." (Doc. 18 at 8.)  Although the ALJ gave great weight to the State agency medical consultant's assessment that Plaintiff's physical impairments were non-severe (Tr. 41-42), it is nevertheless unclear what evidence, if any, the ALJ relied on in determining that Plaintiff could perform the exertional requirements of medium exertion work.  *See Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (stating that the ALJ is required to "build an accurate and logical bridge from the evidence to [his] conclusion so that" a reviewing court "may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review") (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). Therefore, because Plaintiff was denied the right to a full and fair hearing, this case is due to be remanded to the Commissioner for further proceedings.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.      In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on September 3, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record